IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL PETER HARRIGAN

*Plaintiff*,

v.

Civil Action No. ELH-14-00199

SCOTT L. ROLLE, *et al.*

*Defendants*.

## MEMORANDUM OPINION

In this case of alleged criminal legal malpractice, the plaintiff here, Michael Peter Harrigan, was a criminal defendant in a homicide case, where he was represented by defendants Scott Rolle, Esquire; James Reed, Esquire; the Law Office of Scott Rolle, LLC; and James K. Reed (ECF 1).  In addition to alleging criminal legal malpractice, plaintiff has sued defendants for misrepresentation and breach of contract.[1]  The civil suit is rooted in a case that was tried in the Court of Common Pleas, Thirty-Ninth Judicial District of Pennsylvania, Franklin County Branch, captioned *Commonwealth v. Michael Peter Harrigan*, CP-28-CR-0001170-2010, which culminated in Mr. Harrigan's conviction for voluntary manslaughter.  As a result, he was sentenced to five to ten years' incarceration.

Defendants have filed a Motion to Dismiss ("Motion," ECF 17), supported by exhibits. Plaintiff opposes the Motion ("Opposition," ECF 20), and defendants have replied ("Reply," ECF 21).  No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons stated below, the Motion will be granted in part and denied in part.

---

[1] Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1).

## Factual Background[2]

Plaintiff alleges that, on the evening of May 26, 2010, at approximately 10:30 p.m., he contacted his neighbor, Steven Wetzel, in Blue Ridge Summit, Washington Township, Pennsylvania, to complain about the noise and "drunken ruckus" emanating from Mr. Wetzel's adjacent home, which was "disturbing the peace." ECF 1, ¶ 8.   According to plaintiff, an argument ensued between plaintiff, Mr. Wetzel, and Mr. Wetzel's guests.   Thereafter, Mr. Wetzel entered onto plaintiff's property, where plaintiff resided with his wife and infant daughter.   *Id.* ¶ 9.   At the time, Mr. Wetzel was "highly intoxicated" and threatened to "kill Plaintiff and harm his wife and baby daughter."   *Id.*   Harrigan further alleges that, based on Mr. Wetzel's "violent past and reputation in the community for violence," along with Mr. Wetzel's known possession of firearms, Harrigan was "in fear for his life and the lives of his wife and daughter. . . ."   *Id.* ¶ 10.   As a result, Mr. Harrigan "legally armed himself, remained on his own property and guarded the approach to his house."   *Id.* ¶ 11.

At about 1:00 a.m. on May 27, 2010, Mr. Wetzel again entered plaintiff's property and threatened plaintiff.   As Harrigan's wife was contacting the police, plaintiff attempted to "convince the belligerent and highly intoxicated Mr. Wetzel to . . . calm down and leave. . . ." *Id.* ¶ 12.   However, Mr. Wetzel "came at Mr. Harrigan," *id.* ¶ 13, and, "with the apprehension that Mr. Wetzel was armed and intended to do [plaintiff] grievous bodily harm, Mr. Harrigan instinctively discharged his gun, killing Mr. Wetzel involuntarily and in self defense."   *Id.* ¶ 14.

---

[2] The facts are drawn largely from the Complaint.   As discussed, *infra,* given the posture of the case, the Court must assume the truth of the factual allegations.

Harrigan was arrested and charged with "criminal homicide" under Pennsylvania law, 18 Pa. C.S.A. § 2501(b).  The crime of "criminal homicide" encompasses murder, voluntary manslaughter, and involuntary manslaughter.  *Id.* ¶ 15.  As a result, plaintiff "authorized" his father, William Harrigan ("William")[3] to act as his "agent," and on plaintiff's behalf.  *Id.* ¶¶ 16, 17.  William "called" Rolle and asked him to represent plaintiff in the criminal case.  *Id.* ¶ 18. Because Mr. Rolle is not licensed in Pennsylvania, he advised that he would seek the assistance of an attorney licensed in Pennsylvania.  *Id.* ¶ 18.  He then contacted James Reed, who is licensed in Maryland and Pennsylvania.  *Id.* ¶¶ 6, 18, 19.

Rolle told William that he and Reed "would charge a flat, fixed fee of $50,000 for the entire representation, which they would share equally."  *Id.* ¶ 19.  There was no discussion with respect to costs, post-trial proceedings, or an appeal.  *Id.*  Pursuant to the agreement reached with Rolle and Reed, William gave Rolle a check for $50,000 on June 2, 2010, "to be shared with Defendant Reed."  *Id.* ¶ 20.

Although Reed had previously represented the decedent in a separate criminal matter, he told plaintiff "that he did not consider his prior representation of Wetzel to create a conflict in his representation of Plaintiff."  *Id.* ¶ 22.  Moreover, although Reed was representing Wetzel's nephew, Billy Flood, another participant in the "ruckus," Reed "told William Harrigan, that the concurrent representation of Plaintiff and Mr. Wetzel's family member was not a conflict."  *Id.* ¶ 24.  Plaintiff did not learn of Reed's dual representation until after his own trial.  *Id.*

---

[3] To distinguish plaintiff from his father, I shall refer to William Harrigan by his first name.

On or about August 21, 2010, William received a document in the mail from Rolle, entitled "Criminal Retainer Agreement."  It recited that the flat, fixed fee of $50,000 was to cover only the criminal case from arraignment to disposition, exclusive of appeals, post judgment relief, or post-trial motions.  *Id*. ¶ 25.  William did not sign the document because, in his view, it was not consistent with the original agreement.  *Id.*

Plaintiff's criminal homicide trial commenced on February 7, 2011.  Plaintiff alleges that the "obvious, principal defense to the charge of criminal homicide was that Mr. Wetzel had threatened [plaintiff] and his family . . . that Mr. Wetzel was the aggressor in the incident, and that the shooting was in self-defense." *Id*., ¶ 30.  He maintains that the defense, if successful, would have resulted in acquittal.  Further, plaintiff posits that, even if the jury believed the shooting was not completely justified, the defense, at most, supported a conviction of involuntary manslaughter, which is a misdemeanor in Pennsylvania.  *Id.*

Plaintiff alleges that on January 18, 2011, defense counsel filed a motion in limine, seeking to offer evidence as to Mr. Wetzel's criminal history and reputation as to violence, as well as Harrigan's knowledge of the decedent's record; the trial court ruled the evidence was admissible. *Id.* ¶ ¶ 33, 100.  Yet, according to plaintiff, defense counsel failed to offer evidence at trial regarding plaintiff's knowledge of Mr. Wetzel's criminal history and reputation and propensity for violence, and "how that knowledge influenced [plaintiff's] state of mind and actions at the time of the incident."  *Id.* ¶ 35.  Moreover, defense counsel allegedly misrepresented the court's ruling to plaintiff, "falsely telling him that the court had refused to allow the evidence, and warning him that if he attempted to testify to his knowledge of Mr.

4

Wetzel's criminal record or [the decedent's] propensity and reputation for violence, the court could declare a mistrial." *Id.* ¶ 36.

In addition, at trial defense counsel failed to introduce "the abundant character evidence" about plaintiff, *id.* ¶ 43, even though "a multitude of witnesses were available to testify [about] plaintiff's reputation for honesty and for being a peaceful law-abiding citizen…." *Id.* ¶ 41. Defense counsel called just one character witness, but "failed to elicit any testimony … with regard to plaintiff's reputation for the relevant traits…." *Id.* ¶ 42. Although evidence of plaintiff's "honesty and good reputation for being a peaceful, law-abiding citizen" is admissible under Pennsylvania Rule of Evidence 404(a)(1), *id.* ¶ 38, ¶ 39; *see also* ¶¶ 40-43, plaintiff complains that defense counsel "exacerbated the devastating effect of their conduct by failing to request" a jury instruction as to character evidence under Pennsylvania law. *Id.* ¶ 44.

Further, Harrigan complains that defense counsel failed to request a jury instruction on the lesser included offense of involuntary manslaughter, as plaintiff had requested. *Id.*¶¶ 46, 47, 50. In this regard, plaintiff points out that he testified in his own defense and recounted that he did not aim the gun at Mr. Wetzel, and "shot him instinctively when Mr. Wetzel … came at him." *Id.* ¶ 48. He also testified that "the act of shooting Mr. Wetzel was involuntary…." *Id.*

On February 10, 2011, after presentation of all evidence, the jury convicted plaintiff of voluntary manslaughter. *Id.* ¶ 52. On April 7, 2011, the court imposed a mandatory minimum sentence of 5 to10 years in prison. *Id.*

Plaintiff alleges that after conviction Reed demanded, and William paid, an additional $15,000 for post-trial work to overturn the conviction. *Id.* ¶ 25. On March 10, 2011, Rolle wrote to William, claiming that, based on the amount of time expended for the trial, both he and

Reed were each entitled to an additional $25,000.  *Id.* ¶ 28.  Because William was concerned that Rolle and Reed "would not do their best for his son on appeal," unless they were paid more money, he gave Reed an additional $46,000 on April 15, 2011, and he gave Rolle an additional $21,000 on May 9, 2011.  Therefore, plaintiff argues that defendants Rolle and Reed were paid a total of $115,910 for work they had agreed to perform for a flat fee of $50,000.  *Id.* ¶ 29.

Reed filed a post-sentence motion on April 18, 2011, asking the court to set aside the verdict and order a new trial, which he amended on June 10, 2011.  *Id.* ¶ 54.  Reed conceded: "It was error on the part of the Commonwealth as well as the Defense not to insist on this charge [of involuntary manslaughter] given the evidence at trial."  *Id.* ¶ 54.  The motion was denied on July 25, 2011.  *Id.* ¶ 55.  Moreover, according to plaintiff, Reed conceded to William that evidence of Wetzel's criminal history and reputation for violence should have been offered at the trial.  But, he claimed it was Rolle's responsibility, and stated that Rolle was not prepared for trial.  *Id.* ¶ 68.

On August 24, 2011, Reed filed a notice of appeal to the Superior Court of Pennsylvania from the trial court's denial of his post-trial motion.  *Id*. ¶ 57.  The Pennsylvania appellate court issued its opinion on April 3, 2012, *id.* ¶ 62, in which it ruled that appellant failed to preserve his challenges for review.  *Id.* ¶ 61.  Specifically, the Pennsylvania court concluded that the issues concerning the failure of the trial court to instruct on involuntary manslaughter, and the failure of the trial court to instruct the jury fully on justification and the duty to retreat, were waived because no request or objection was made.  *Id.* ¶¶ 58, 59, 61.

Prior to the decision of the Pennsylvania appellate court, defendants had repeatedly told plaintiff that, in chambers, the trial judge had refused to propound a jury instruction on involuntary manslaughter.  *Id*. ¶ 63.  Moreover, defendants did not raise on appeal the trial

6

court's alleged failure to permit evidence of Mr. Wetzel's criminal history and character evidence as to plaintiff. *Id.* ¶ 64. So, plaintiff "still did not know that defendants' repeated representations that they had also asked the trial court to admit [such] evidence … were also false…." *Id.*

Following plaintiff's unsuccessful appeal of his conviction, attorneys Rolle and Reed were discharged. Plaintiff retained David J. Foster, Esquire, a Pennsylvania lawyer, to pursue a new trial under the Pennsylvania Post Conviction Relief Act, Pa. C.S.A. § 9541 *et. seq. Id.* ¶ 65. However, defendants refused to produce their files to Foster until such time as they were paid for costs of reproduction. *Id.* ¶¶ 66, 67. Still, Reed took three months to produce his file. *Id.* ¶ 69.

Upon review of Reed's file, plaintiff discovered the falsity of defense counsel's repeated representations that the trial judge would not permit evidence of Mr. Wetzel's criminal record and his reputation for violence; the court had, in fact, ruled to the contrary. *Id.* ¶ 70.

Mr. Foster filed a petition for post-conviction relief on October 5, 2012. *Id.* ¶ 71. In the post-conviction petition, plaintiff alleged that defendants Rolle and Reed provided ineffective assistance of counsel, causing him to be convicted of a crime he did not commit. The Commonwealth responded on November 13, 2012. *Id.* ¶ 72. The Pennsylvania court held evidentiary hearings on June 20, 2013, August 8, 2013, and September 13, 2013. *Id.* ¶¶ 73, 74, 75. Plaintiff, Reed, and Rolle all testified. According to plaintiff, Reed explained that defense counsel did not introduce evidence of Mr. Wetzel's criminal history, reputation for violence, or testimony concerning plaintiff's knowledge of Wetzel's reputation for violence, "for fear of 'tearing down the victim unnecessarily.'" *Id.* ¶ 75. Moreover, he explained that defense counsel

7

did not request a jury instruction on involuntary manslaughter because the evidence did not support such an instruction.  *Id.*

Counsel for both sides submitted post-hearing briefs in December 2013, after receipt of the trial transcripts.  ECF 17-2 at 3.  In January 2014, while the post-conviction matter was pending in the Pennsylvania trial court, plaintiff filed this suit.  ECF 1.

The Complaint contains eight counts, as follows.  Count One is titled: "Criminal Malpractice of Both Defendants: Negligence Resulting in Conviction Where Plaintiff Innocent of All Charges."  Count Two is titled: "Criminal Malpractice of Both Defendants: Negligence Resulting in Conviction Where Plaintiff Innocent of Voluntary Manslaughter."  Count Three is titled:  "Criminal Malpractice of Both Defendants Reckless and Wanton Disregard of Plaintiff's Interest Resulting in Conviction Where Plaintiff Innocent of All Charges."  Count Four is titled: "Criminal Malpractice of Both Defendants: Reckless and Wanton Disregard of Plaintiff's Interests Resulting in Conviction Where Plaintiff Innocent of Voluntary Manslaughter."  Count Five is titled: "Intentional Misrepresentation: Admissibility of Character Evidence"; Count Six is titled: "Intentional Misrepresentation: Involuntary Manslaughter Instruction."  Count Seven is titled: "Breach of Contract: Defendant Rolle."  Count Eight is titled: "Breach of Contract: Defendant Reed."

On April 21, 2014, the post-conviction court, the Court of Common Pleas of the Commonwealth of Pennsylvania, rejected all of plaintiff's claims of error and denied post-conviction relief.  *See* ECF 17-2 (Defendants' Exhibit A to the Motion to Dismiss).  In its ruling, the Court of Common Pleas concluded, *inter alia*, that defense counsel had a reasonable basis for

failing to introduce evidence of the decedent's prior convictions.  ECF 17-2 at 7-8.[4]  Harrigan did

not appeal that ruling.  ECF 23.

Notably, the allegations in the petition for post-conviction relief are virtually identical to

those in the Complaint.   In both actions, plaintiff complains that defendants "failed to offer

evidence of the decedent's criminal history and propensity and reputation for violence; failed to

offer evidence of plaintiff's good reputation for honesty and being a peaceful law abiding citizen;

failed to offer other exculpatory evidence and call exculpatory witnesses; failed effectively to

examine and cross-examine witnesses; failed to request an involuntary manslaughter instruction;

and otherwise violated the standard of care of criminal defense counsel."  ECF 1 at 2.

## I.   Standard of Review

Defendants' Motion is predicated on Fed. R. Civ. P. 12(b)(6).  A defendant may test the

adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *See McBurney v.*

*Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).  A motion to dismiss pursuant to Rule 12(b)(6)

constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the

complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a

complaint states a claim for relief is assessed by reference to the pleading requirements of Fed.

R. Civ. P. 8(a)(2).  It provides that a complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the

defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555–56 & n.3 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662

(2009).

---

[4] The ECF page citations do not correspond to the page numbers in the opinion.

A plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, _____ U.S. _____, No. 13-1318, slip op. at 1 (Nov. 10, 2014) (per curiam).  But, the rule demands more than bald accusations, mere speculation, *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable and ... recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.  In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Iqbal*, 556 U.S. at 684; *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) a motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir.), *cert. denied*, ──── U.S. ────, 132 S.Ct. 402 (2011); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 991 (2010).  "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, —— U.S. ——, 132 S.Ct. 1960 (2012). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009).

A Rule 12(b)(6) motion will be granted if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citation omitted). But, "'Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citation omitted); *accord Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Reg. Sys., Inc.*, 680 F.3d 1194, 1201–02 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief.").

A motion asserting failure to state a claim typically "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses," *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (quotation marks omitted), unless such a defense can be resolved on the basis of the facts alleged in the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear [ ] on the face of the complaint,'" or in other documents that are proper subjects of consideration under Rule 12(b)(6). *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)) (emphasis in *Goodman*).

Ordinarily, a court "is not to consider matters outside the pleadings … when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  But, a court "may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" *Anand v. Ocwen Loan Servicing,* LLC, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt County Memo. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  *See also Clatterbuck v. City of* Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains, gives rise to the legal rights asserted.*'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point,* LLC, 794 F. Supp. 2d 402, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

In addition, a court may take judicial notice of certain public filings.  In *Philips v. Pitts County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009) the Court said: "In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record." Similarly, in *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), the Court said: "[T]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.'" (Citations omitted).  *See also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.), *cert. denied*, ____ U.S. ___, 132 S. Ct. 115 (2011); *Drubetskoy v. Wells Fargo Bank, N.A.*, 2013 WL 6839508, at *2 (D. Md. Dec. 20, 2013) (taking judicial notice of plea agreement evidencing the plaintiff's criminal conviction, because it "is a matter of public record, as it was filed in open court"); Fed. R. Evid. 201(b)(2).

Plaintiff has not disputed the authenticity of the ruling of the Pennsylvania Court in denying plaintiff's petition for post-conviction relief.  I will take judicial notice of that decision. *See* Fed. R. Evid. 201(b).

## II.  Choice of Law

As a preliminary matter, a federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice of law rules.  *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007).  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Regarding tort claims, such as the claim of legal malpractice, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*").  *See, e.g., Proctor v. Washington Metropolitan Area Transit Auth.,* 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007).

In *Naughton v. Bankier*, 114 Md. App. 641, 649, 691 A.2d 712, 716 (1997), the Maryland Court of Special Appeals stated:  "In situations when a cause of action accrues in one state and the adjudicatory forum of the action lies in another state, Maryland follows the conflict of laws principle of *lex loci delicti*. . . .  This results in the application of the procedural law of the forum state, and the application of the substantive law of the place (state) of the wrong."

In regard to the contract claims, defendants assert: "Plaintiff assumes, without any analysis, that Pennsylvania law controls."  ECF 21 at 16.  They assert: "'Maryland courts ordinarily should apply the law of the jurisdiction where the contract was made.'"  *Id*. at 17 (quoting *Allstate Ins. Co. v. Hart*, 327 Md. 526, 529, 611 A.2d 100, 101 (1992)).  This principle is known as *lex loci contractus*.  *See*, *e.g.*, *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995).  Citing ¶¶ 18-20 of the complaint (ECF 1), defendants

posit: "Defendants' services were retained in Maryland" and therefore "Maryland law applies." ECF 21 at 17.

Contrary to defendants' suggestion, there is nothing in paragraphs 18 to 20 of the complaint (ECF 1) that illuminates the issue of where the contract was made. Indeed, there is little in the complaint that pertains to the formation of the contract. As the Supreme Court observed in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), in a different context: "[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines. . . ." This is certainly so in the internet age; the place of contract is sometimes complicated. And, this court cannot resolve that issue in the context of a motion to dismiss.

Thus, as to the contract claim, it is not clear whether Maryland or Pennsylvania law applies. But, choice-of-law analysis becomes necessary "only if the relevant laws of the different states lead to different outcomes." *Lowry's Reports, Inc. v. Legg Mason, Inc.*, 271 F. Supp. 2d 737, 750 (D. Md. 2003). Here, the parties have not identified any relevant contractual principles in Maryland that differ from those of Pennsylvania. Where the laws "do not so conflict, the choice is immaterial, and the law of the forum-Maryland-governs." *Id.*; *see also Cleaning Auth., Inc. v. Nubert,* 739 F. Supp. 2d 807, 820 (D. Md. 2010).

As indicated, as to the legal malpractice claim, Pennsylvania law applies. In any event, it appears that both Pennsylvania and Maryland law are in accord with respect to the elements for a successful claim of criminal legal malpractice. At this juncture, however, I will defer resolution of the choice of law issue until after the parties have engaged in discovery. *See Ohio Sav. Bank*

*v. Progressive Cas. Ins. Co.*, 521 F.3d 960, 962 (8th Cir. 2008) (ignoring complex choice of law analysis because the parties failed to identify a relevant state law conflict).

### III.    Discussion

### A.  Legal Malpractice

Plaintiff has indicated in the title of his complaint that this case alleges criminal legal malpractice, predicated on defendants' representation of plaintiff in a homicide trial in Pennsylvania and the subsequent appeal of plaintiff's conviction for voluntary manslaughter. Plaintiff seeks to recover damages based on claims of negligence, reckless and wanton disregard for plaintiff's interests, intentional misrepresentation, and breach of contract.

As noted, plaintiff sought post-conviction relief prior to filing suit.  On April 21, 2014, during the pendency of this case, the Pennsylvania Court of Common Pleas rejected plaintiff's claims of error and denied his petition for post-conviction relief.  That ruling is the centerpiece of defendants' Motion.  According to defendants, because plaintiff failed to obtain post-conviction relief, his legal malpractice claim must also fail.  ECF 17-1 at 2.

In his Opposition, plaintiff asserts: "While the Plaintiff did not obtain a reversal of his criminal conviction pursuant to the Post-Conviction Relief Act, this should not be determinative of his legal malpractice claims."  ECF 20-1 at 2.

The seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984), pertains to a Sixth Amendment claim of ineffective assistance of counsel.  *Strickland* set forth a two-pronged test. First, the petitioner must show that his attorney's performance was "below an objective standard of reasonableness, measured by prevailing professional norms."  *Strickland*, 466 U.S. at 688. This is known as the "performance prong" of the test.  Second, the petitioner must show that his

attorney's deficient performance "prejudiced [his] defense." *Id.* at 687.  To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Id.*[5]  *See also Missouri v. Frye*, ____ U.S. ____, 132 S.Ct. 1399 (2012); *Laffler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

The Pennsylvania post-conviction court did not cite *Strickland* or its progeny. Nevertheless, I am satisfied that the test for ineffective assistance articulated by the Pennsylvania court is in accord with *Strickland*.  The Pennsylvania court, relying, *inter alia*, on *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987) and *Commonwealth v. Abu Jamal*, 720 A.2d 79, 88 (Pa. 1998), ECF 17-2 at 5-6, stated: "First, the underlying claim must be of arguable merit.  Second, there was no reasonable basis that existed for counsel's act or failure to act. Third, the prejudice prong, but for the act or omission, it is reasonably probable that the outcome would have been different." *Id*.  Applying that standard, the court rejected the petition for post-conviction relief.

There is no dispute as to the findings of the Pennsylvania post-conviction court.  Rather, the parties disagree about the significance of that court's decision in regard to this claim for legal malpractice.  Both sides rely on *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108  (1993).

*Bailey* involved three consolidated appeals.  The appellants in the consolidated cases asserted causes under various guises, all of which amounted to actions in criminal legal

---

[5] A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697.

malpractice. 533 Pa. at 245, 621 A.2d at 112. The Supreme Court of Pennsylvania carefully considered the policy implications of civil suits against criminal defense attorneys, rejected the notion of absolute immunity on a claim of professional negligence, but distinguished civil legal malpractice claims from those arising from criminal cases. *Id.* at 246-247, 621 A.2d at 112-113.

The court held, *id.* at 250-51, 621 A.2d at 115, that a plaintiff seeking to bring a civil malpractice claim against a criminal defense attorney, resulting from his or her representation in criminal proceedings, must establish the following five elements:

(1)     The employment of the attorney;

(2)     Reckless or wanton disregard of the defendant's interest on the part of the attorney;

(3)     the attorney's culpable conduct was the proximate cause of an injury suffered by the defendant/plaintiff, i.e., "but for" the attorney's conduct, the defendant/plaintiff would have obtained an acquittal [sic] for a complete dismissal of the charges.[]

(4)     As a result of the injury, the criminal defendant/plaintiff suffered damages.

(5)     *Moreover, a plaintiff will not prevail in an action in criminal malpractice unless and until he has pursued post-trial remedies and obtained relief which was dependent upon attorney error;[]* additionally, although such finding may be introduced into evidence in a subsequent action it shall not be dispositive of the establishment of culpable conduct in the malpractice action.[] (Emphasis added.)

In his Opposition, plaintiff maintains that "the policy arguments underlying the *Bailey* decision are not on point in this instance and do not require dismissal of Plaintiff's claims of legal malpractice." ECF 20-1 at 6. Harrigan focuses on the *Bailey* Court's requirement that the defendant demonstrate actual innocence in order to proceed. 533 Pa. at 247, 621 A.2d at 113. However, the elements outlined above by the *Bailey* Court do not require establishment of actual

innocence.[6]   Moreover, the post-conviction court did not predicate its decision on Harrigan's failure to establish actual innocence.

What is salient is that the *Bailey* Court made abundantly clear that, in order to prevail in a claim of criminal legal malpractice, the plaintiff in the civil case, *i.e.*, the former criminal defendant, must successfully obtain post-trial remedies.   And, Mr. Harrigan did not prevail in regard to his post-conviction petition.

Maryland law is consistent with *Bailey*.   In *Berringer v. Steele*, 133 Md. App. 442, 758 A.2d 574 (2000), the Maryland Court of Special Appeals cited *Bailey*, and cases from many other jurisdictions, noting that, for reasons of public policy, courts have expanded the requirements of a criminal malpractice action beyond those of civil malpractice, to require successful post-conviction relief as a predicate to maintenance of a criminal malpractice action. *Id.* at 474, 758 A.2d at 591-92.   The Maryland appellate court said, 133 Md. App. at 484, 758 A.2d at 597:

> Public policy considerations prompt us to align ourselves with those jurisdictions that have imposed appellate, post-conviction, or habeas relief, dependent upon attorney error, as a predicate to *recovery* in a criminal malpractice action, when the claim is based on an alleged deficiency for which appellate, post-conviction, or habeas relief would be available.   A criminal conviction evidences that a fact-finder concluded, beyond a reasonable doubt, that the defendant committed the crime charged.   Ordinarily, when the alleged negligence of defense counsel contributed to a conviction, the proper redress for the ineffective assistance of counsel is pursuit of one of the aforementioned forms

---

[6] In my view, plaintiff misconstrues *Bailey*.   The *Bailey* Court distinguished a criminal defendant's "profiting from his crime" based on a malpractice suit, from the right to a new trial based on inadequate representation.   533 Pa. at 247, 621 A.2d at 113.   In order to recover monetary compensation, the court would require, "as an element to a cause of action in trespass against a defense attorney whose dereliction was the sole proximate cause of the defendant's unlawful conviction, [that] he is innocent of the crime or any lesser included offense." *Id.*   But, if a person is convicted because of the inadequacy of counsel's representation, "justice is satisfied by the grant of a new trial." *Id.*   In that circumstance, actual innocence is not required.

of post-trial relief a criminal defendant may prevail in having the judgment of conviction vacated in a post-conviction, appellate, or habeas proceeding, for any number of reasons.  If a potential criminal plaintiff is unsuccessful in obtaining relief from conviction, then it would seem that the attorneys' conduct was not the proximate cause of the conviction or injury.

As noted, it is undisputed that Harrigan has failed to obtain post-conviction relief.  And, in Pennsylvania, as in Maryland, such relief is a predicate to recovery which respect to a claim for criminal legal malpractice.  Therefore, Counts One through Four fail as a matter of law.

## B.  Misrepresentation

In Counts Five and Six, plaintiff asserts claims of intentional misrepresentation against defendants for actions taken during the course of defendants' representation of plaintiff in the criminal case.  According to plaintiff, defendants falsely told him that the court had ruled that evidence as to the decedent's criminal history and propensity for violence was inadmissible. ECF 20-1 at 9.  Further, he claims that defendants falsely represented to plaintiff that the court had ruled the evidence was insufficient to support a jury instruction on the charge of involuntary manslaughter.  *Id.*  Harrigan asserts:  "Neither representation was true.  In fact, the court had specifically ruled that evidence of Mr. Wetzel's criminal history and propensity for violence *was* admissible." *Id.* (citing ECF 1, ¶ 100).  Plaintiff adds: "Additionally, the court never ruled there was not enough evidence to support an involuntary manslaughter verdict or jury instruction as Defendants asserted; *Defendants never even requested that such an instruction be given*."  ECF 20-1 at 9 (citing ECF 1, ¶ 108) (emphasis in ECF 20-1).

Defendants urge rejection of plaintiff's claims for intentional misrepresentation on the same basis as they advanced with regard to Counts One through Four.  ECF 17-1 at 2.  They

insist that the misrepresentation claims are "nothing more than a repackaging of [plaintiff's] criminal legal malpractice claim . . . ." ECF 21 at 13.

Plaintiff counters that the claims for intentional misrepresentation (and for breach of contract) are separate and distinct.  In his view, their "viability" does not turn on either actual innocence or demonstration of ineffective assistance of counsel.  ECF 20-1.

According to Harrigan, the claims of intentional misrepresentation are not the "equivalent of Plaintiff's claims for malpractice," because they are not based on allegations of negligence or of ineffective assistance.  ECF 20-1 at 10.   Rather, they "are grounded in the intentional, deceitful misconduct of Defendants, and as such the Court of Common Pleas' determination has no bearing on the viability of these claims."  *Id*.  Plaintiff adds that the counts for intentional misrepresentation are "separate and distinct" from the claims for legal malpractice in Counts One and Four, ECF 20-1 at 11, because "the claims for intentional misrepresentations are assumpsit claims based on a contractual breach of the attorney-client agreement."  *Id*.  In other words, "liability is based on the terms of [the] contract."  *Id*.  As a result, the claim "'does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence.'"  *Id*. (quoting *Bailey, supra*, 533 Pa. at 252, 621 A.2d at 115).

In *Bortz v. Noon*, 556 Pa. 489, 499, 729 A.2d 555, 560 (1999), the Supreme Court of Pennsylvania articulated the elements of a claim for intentional misrepresentation, as follows: "(1)  A representation; (2) which is material to the transaction at hand; (3) made falsely, which knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was approximately caused by the reliance."   The court added that the tort of

intentional non-disclosure has the same elements, "'except in the case of intentional non-disclosure, the party intentionally concealed the material facts rather than making an affirmative misrepresentation.'" (Citation omitted.)

Careful scrutiny of plaintiff's allegations with respect to Counts Five and Six makes clear that the claims of intentional misrepresentation are little more than a reformulation of the criminal malpractice claims. Plaintiff's attempt to apply contract analysis to them misses the mark.

As indicated, plaintiff complains that defendants misrepresented the trial court's rulings with respect to the admission of evidence and the jury instruction for involuntary manslaughter. As a result, claims plaintiff, he was improperly convicted of voluntary manslaughter. Yet, plaintiff complains that "*Defendants never even requested that such an instruction [for involuntary manslaughter] be given.*" ECF 20-1 at 9 (quoting ECF 1 at ¶ 108) (emphasis in ECF 20-1). Plaintiff also asserts: "Defendants failed to provide services consistent with the profession at large in that there was no meaningful discussion or informed decision regarding the decision to present or not present certain evidence." ECF 20-1 at 11. Plaintiff adds that if defendants had "engaged in a frank and honest discussion with Plaintiff regarding their reservations about putting on propensity or character evidence, or to pursue an involuntary manslaughter instruction, Plaintiff could have insisted that the evidence be presented as he wished, or sought new counsel who would honor his desire to pursue particular trial strategy." ECF 20-1 at 11. And, plaintiff states, *id.* at 11-12: "In either event, the crux of the matter is that Plaintiff was entitled to know the truth and to make informed decisions accordingly."

These allegations are, as defendants contend, a "repackaging" of the criminal malpractice claims.  At the post-conviction stage, plaintiff advanced identical arguments in regard to the claim of ineffective assistance of defense counsel, and the post-conviction court rejected the claims.  For example, with regard to the claim of ineffective assistance for failure to introduce evidence of the victim's propensity for violence, including his prior criminal record, the post-conviction court said:  "The Commonwealth argues that the crimes are of no probative value as to the victim's aggressive nature on the night of the homicide because the acts are not of the same nature and because the prior convictions occurred too distant in time. . . .  We agree and, therefore, the claim lacks merit on that basis."  ECF 17-2 at 4.  Although the post-conviction court found "arguable merit," ECF 17-2 at 7, with respect to the decedent's prior criminal record, the court ultimately determined that "trial counsel had a reasonable basis for failing to introduce these convictions." *Id.*

For these reasons, it does not appear that plaintiff can satisfy the element that the resulting injury was proximately caused by any reliance on defendants' alleged misrepresentations.

### C.  Breach Of Contract

Plaintiff claims breach of contract in Counts Seven and Eight.  In essence, he alleges that defendants breached the terms of the parties' fee agreement by exceeding the fee to which defendants agreed with William Harrigan, plaintiff's father, who was acting on behalf of his incarcerated son.  ECF 20-1.  In particular, plaintiff alleges that defendants agreed to represent plaintiff for a flat, fixed fee of $50,000, to be divided between the lawyers.  ECF 1 at ¶ 115.  Further, plaintiff alleges that defendants breached this agreement by charging additional fees

totaling $61,000.  He asserts:  "Defendants committed a clear breach of the agreement in demanding additional payments above and beyond the flat, fixed fee arrangement to which they agreed.  That breach occurred regardless of whether Defendants' actions throughout trial constituted ineffective assistance of counsel . . . ."  ECF 20-1 at 13.[7]

I agree with plaintiff that the breach of contract claims are not a mere restatement of the legal malpractice claims lodged against defendants.  Thus, they are not barred by the denial of post-conviction relief to the plaintiff.

In *Bailey*, the court said that an attorney's liability with respect to a claim for breach of contract "will be based on terms of that contract."  533 Pa. 237, 252, 621 A.2d at 116.  The court observed: "Of course an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large."  533 Pa. at 251-252, 621 A.2d at 115.  But, the court expressly said that the claim for breach of contract "does not require a determination by an appellate court of ineffective assistance of counsel, nor does the client need to prove innocence."  533 Pa. 252, 621 A.2d at 115.[8]

Defendants also contend that the contract claim fails because the claim was assigned to plaintiff by his father, and any assignment of the malpractice claim to plaintiff from his father is

---

[7] As noted, defendants assert that Maryland law applies to the breach of contract claim, because defendants' services were retained in Maryland.  But, it is not clear from the complaint whether legal services were, in fact, retained in Maryland, as defendants allege.  And, at this juncture, all facts and inferences are construed in favor of plaintiff.  What is clear is that the services were to be performed in Pennsylvania.

[8] Notably, the *Bailey* Court said that "damages will be limited to the amount actually paid for the services plus statutory interest."  *Id.*  This is an issue that the parties did not brief.  And, I need not address here the issue of damages for breach of contract.

invalid, as a matter of law.  ECF 21 at 18 (citing *Cook v. Nationwide Ins. Co.*, 952 F. Supp. 807, 816 (D. Md. 2013)).  As noted, however, the contract claim is not the same as the malpractice claim.  Therefore, the breach of contract claim is not an assignment of a malpractice claim.

Under Pennsylvania law, a cause of action to recover for personal injuries may not be assigned.  *Hedlund Mfg. Co., Inc. v. Weiser Stapler & Spivak*, 517 Pa. 522, 527, 539 A.2d 357, 358 (Pa. 1988).  With respect to a claim of civil legal malpractice, however, the *Hedlund* Court observed that "a claim for damages based upon legal malpractice does not involve personal injury in that it arises out of negligence and breach of contract, and the injury alleged concerns purely pecuniary interests."  *Id.* at 526, 539 A.2d at 359.  The Pennsylvania court also said, *id.*: "The rights involved are more akin to property rights with *can* be assigned prior to liquidation." And, the Pennsylvania court stated:  "We will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice.  Where the attorney has caused harm to his or her client, there is no relationship that remains to be protected."  *Id.*

Moreover, plaintiff has alleged that his father advanced the money to defendants on behalf of plaintiff, and he must reimburse his father for the cost of the lawyers.  Under the facts asserted, where plaintiff was incarcerated and not readily able to obtain defense counsel, plaintiff has adequately alleged that his father was acting as his agent.  This suggests that the assignment argument is misplaced.

Finally, under Maryland law, which defendants contend applies here, plaintiff may satisfy the elements for the status of third-party beneficiary.  *See Parlette v. Parlette*, 88 Md. App. 628,

637, 596 A.2d 665, 691 (1991) (Motz, Diana, J.); *Milbourne v. Conseco Servs., LLC*, 181 F.

Supp. 2d 466 (D. Md. 2002) (Davis, J.); Restatement (Second) of Contracts (1981), § 302.

In sum, I decline at this juncture to dismiss Counts Seven and Eight.  ECF 20-1 at 16.

An Order follows.


Date:   December 12, 2014                    /s/ _____
                                             Ellen L. Hollander
                                             United States District Judge